IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-CV-00124-RLV
(5:06-CR-00041-RLV-DCK-14)

| JUAN LOPEZ, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the Court following an evidentiary hearing on a claim of ineffective assistance of counsel raised by Petitioner in his motion to vacate his sentence which he filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, the Court finds that Petitioner has failed to present sufficient evidence to support his claim for relief and it will therefore be denied.

### I. BACKGROUND

Petitioner was convicted in this district following a jury trial on one count of conspiracy to possess with intent to distribute methamphetamine, cocaine and cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count One), and a separate count of possessing with intent to distribute methamphetamine and aiding and abetting the same, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2 (Count Twenty). Petitioner appealed but the appeal was dismissed upon his appellant counsel's motion in which he contended that Petitioner's claims were more properly considered in a post-conviction proceeding. United States v. Lopez, No. COA 08-5131, Doc. Entry 43-1 (4th Cir. Jan. 29, 2010).

1

After his criminal judgment became final Petitioner filed a timely Section 2255 motion by and through counsel, and raised claims of ineffective assistance of trial counsel. The Government filed a motion for summary judgment as to all claims in the § 2255 motion. This Court granted the motion on August 27, 2013, and dismissed the § 2255 motion, and Petitioner appealed. On April 30, 2014, the Fourth Circuit filed a per curiam opinion finding that Petitioner was entitled to an evidentiary hearing on one issue: Whether his trial counsel, Mr. George Young, provided ineffective assistance of counsel when he failed to pursue plea negotiations with the Government even though Petitioner, as he maintained, specifically directed him to do so. This alleged failure, as Petitioner's argued, forced him to forgo a possible plea and face trial on the two counts of his indictment for which he was ultimately convicted. See United States v. Lopez, 570 Fed. App'x 291, 292-93 (4th Cir. 2014) (unpublished).

## II. EVIDENTIARY HEARING

Petitioner was appointed counsel on remand and an evidentiary hearing was convened where Petitioner was present, testified, and filed several supporting exhibits which were received into evidence without objection. Petitioner also presented the testimony of a former trial attorney, Mr. Roy Wiggins, and Petitioner's mother, Maria Diaz. The Government presented the testimony of Mr. Young who, incidentally, was one of many attorneys that represented Petitioner during his criminal proceedings, and ultimately tried Petitioner's case before a jury.

### A. Petitioner's Trial Counsel

Petitioner's first counsel, Mr. Brent O'Conner, made a limited appearance on Petitioner's behalf following the return of the indictment, but he was later allowed to withdraw because Petitioner did not have sufficient funds to retain him. Mr. Marcos Roberts was then

2

appointed and later allowed to withdraw after attorney Christopher Johnson, an attorney from California, made a general appearance. (5:06-CR-00041, Doc. Nos. 71, 130). Attorney Roy Wiggins made an appearance to serve as local counsel pursuant to the Local Rules of this District because Mr. Johnson was admitted *Pro Hac Vice*. See LCvR 83.1(B)(1). Attorney Samuel Long, who was with the same firm as Mr. Johnson in California, was also admitted *Pro Hac Vice*. (Id., Doc. No. 174: Order). Mr. Long was later allowed to withdraw for good cause shown, and Mr. Johnson was permitted to withdraw after Mr. Young was retained, and made a general appearance in the case. (Id., Doc. No. 268: Order). Mr. Wiggins was also allowed to withdraw as local counsel.

### B. Petitioner's Testimony

#### 1. Direct Examination

In his testimony in the evidentiary hearing, Petitioner details a meeting with Mr. Johnson wherein a plea offer of fourteen years imprisonment was communicated to him in the fall of 2006, but Mr. Johnson advised him to wait for a better offer from the Government. Mr. Long presented Petitioner with a second plea agreement in early 2007, which was for twelve years, but Mr. Long also thought it best to wait for a better offer and Petitioner did not protest this decision. Mr. Wiggins later met with Petitioner in the Mecklenburg County detention center and presented him with a written copy of a plea agreement which had been negotiated by Mr. Long and the Government. Pursuant to this agreement, Petitioner would plead guilty to Count One in his indictment and he would acknowledge that he faced a sentence of no less than five years nor more than 40-years' imprisonment. The agreement also restricted the amount of drugs for which Petitioner agreed he was responsible in the conspiracy charged in Count One. This notable

concession limited his involvement in the conspiracy to at least 350 grams but less than 500 grams of methamphetamine which was a substantial departure from the conduct charged in the indictment which alleged that Petitioner and his co-defendants were responsible for (1) at least 500 grams of a substance containing a detectable amount of methamphetamine; (2) at least 50 grams of actual methamphetamine; and (3) at least 5 kilograms of a substance containing a detectable amount of cocaine. (Id., Doc. No. 3: Indictment; Doc. No. 467-2: Long Plea Agreement).

Mr. Wiggins informed Petitioner that it was a good offer and he recommended he sign it because it was likely the best offer the Government would present. Petitioner testified that he wanted to plead guilty after hearing this offer but he first wanted to consult with Mr. Long before reaching a decision. A copy of the plea agreement was left with Petitioner by Mr. Wiggins, however Petitioner never had any further discussions with Mr. Long because Long withdrew from representation.[1]

Mr. Young, an attorney from Texas, was then retained by Petitioner's family and he met with Petitioner in the Mecklenburg County jail. Petitioner testified that at this meeting he inquired whether he could still accept the plea deal presented by Mr. Wiggins for a sentence of five to forty years' imprisonment. According to Petitioner, Mr. Young advised that he would first like to examine the Government's evidence which was provided in discovery and then he could approach the Government about the plea agreement. Mr. Young met with Petitioner again a few days later and Petitioner testified that he was still interested in a plea deal, but Mr. Young told

---

[1] Mr. Long explained in a motion to withdraw from further representation that the firm he was employed with was taken over by the California State Bar and he was no longer employed there. (Id., Doc. Nos. 253, 252).

him to wait. Petitioner testified that he was ready to pursue the five to forty year offer because he believed that might be his last chance to plead guilty because no further offers would be forthcoming. Mr. Young met with Petitioner a third time in November 2007, and Petitioner testified that he again asked him about the five to forty year plea offer and Mr. Young informed him that he had just received all of the Government's discovery and that he would begin reviewing it the next day. Petitioner testified that he did not see Mr. Young again until the day of his trial which was in March 2008. As Petitioner maintained, despite his position on wanting to reach a plea deal, Mr. Young never discussed the five to forty year offer with him again or presented him with a proposed written plea agreement.

On March 4, 2008, Petitioner's criminal case was called for trial. Petitioner testified that on the first day of the trial, Mr. Young approached him with a plea offer from the Government for a "Level 28" which Petitioner further explained was "28 points" and Petitioner avers that he agreed to the deal and Mr. Young left to speak with the Government.[2] Petitioner testified that Mr. Young returned a few minutes later and explained that the Government would not offer a written plea agreement and that his only option was to appear before the Court and plead guilty. Petitioner asked Mr. Young how long his sentence would be if he chose to plead without a written plea agreement and Mr. Young responded that it could be 75 to 88 months' imprisonment but he was not certain. Petitioner stated that he would accept that possible sentence but only if he had a written agreement. Petitioner's counsel asked Petitioner at the evidentiary hearing why he

---

[2] Petitioner explained that he knew he needed to sign the plea agreement presented by Mr. Wiggins and avoid a trial based on his belief that he would be convicted because he knew there were four witnesses that were prepared to testify against him. Petitioner further avers that he had always intended to plead guilty because he learned from inmates on his first day of detention in the Mecklenburg County jail that it would be easy to convict him of involvement in the drug conspiracy.

5

decided not to plead guilty without a written plea agreement and he responded that he was uncertain what charges he would be pleading guilty to or what sentence would be imposed. Petitioner testified that he never explained this reason to Mr. Young.

### 2. Cross-Examination

On cross-examination, Petitioner testified that he wanted to sign the plea agreement presented by Mr. Wiggins, but as he explained earlier, he never had another opportunity to speak with Mr. Long regarding the agreement. After Mr. Young entered the case, Petitioner testified that he provided him with all of the witnesses that he believed could assist in his defense during one of their initial meetings. Petitioner again testified that Mr. Young informed him that the Government offered a plea deal with a Guideline level of 28, but because this offer was not presented in a written plea agreement, he refused to plead guilty because he could not be sure of the charges to which he was pleading.

### C. Mr. Wiggins' Testimony

Petitioner's counsel next called Mr. Wiggins as a witness. In his testimony, Mr. Wiggins explained that as local counsel, he worked with Mr. Johnson and Mr. Long because they were not admitted to practice in the Western District. Mr. Wiggins describes limited contact with Petitioner but he did testify about a letter he wrote to Sergeant Clarkson of the Mecklenburg County Sheriff's Department on May 16, 2007, in an effort to arrange a meeting with Petitioner while he was detained. (Id., Doc. No. 467-1: Defendant's Exhibit 1). Mr. Wiggins met with Petitioner five days later and presented him the proposed written plea agreement which was negotiated between Mr. Long and the Government.

Petitioner's counsel presented Mr. Wiggins with some notes that he had maintained in

6

Petitioner's file. In the notes Mr. Wiggins wrote the following: "All others lining up to testify." He also noted that there was a confidential informant involved in the case and that there were several people that had identified Petitioner as a supplier. (Id., Doc. No. 467-3: Defendant's Exhibit 3). Based on his recollection the case, Mr. Wiggins believed that the evidence against Petitioner was fairly strong. On cross-examination, Mr. Wiggins could not recall when he had taken those notes and whether they were taken during a meeting with Petitioner.

### D. Maria Diaz's Testimony

Petitioner's counsel next presented testimony from Petitioner's mother who resided in Hendersonville, North Carolina, at the time of Petitioner's participation in the drug conspiracy. Mrs. Diaz testified that she hired Mr. Young to represent Petitioner and that in her first discussions with him, Mrs. Diaz informed Mr. Young that Petitioner wished to plead guilty and avoid a trial because he was in fact guilty of the conduct charged in his indictment.

### E. Mr. Young's Testimony

The Government called Mr. Young to testify. Through his testimony, Mr. Young averred that he had over 35 years of experience in criminal law and had tried over 50 jury trials in state and federal court. As noted earlier, Petitioner's family contacted Mr. Young about representing Petitioner and as he explained in his motion to appear *Pro Hac Vice* he was "retained personally by the family of Juan Lopez to provide legal representation in connection with this case through the trial of this case." (Id., Doc. No. 468-2). Mr. Young also described the contents of his written fee agreement, which provided, in relevant part, that his fee was $25,000 and that he was limiting his representation "through **ONE TRIAL ONLY**" or that his representation would terminate upon the acceptance of a plea agreement by the Court. The fee agreement also provided that the

$25,000 dollar fee was considered earned when paid and was non-refundable no matter the outcome of the case. (Id., Doc. No. 469-2 at 1 ¶¶ 3-4) (Bold in original).

Mr. Young flew to North Carolina for his initial face-to-face meeting with Petitioner. Mr. Young testified that during this first meeting he wanted to determine whether Petitioner would consider trying to resolve his case with a plea or instead choose to proceed to trial. Mr. Young explained that Petitioner was adamant that he wanted to go to trial because the witnesses that were identified in the Government's discovery were his friends and would refuse to testify against him. Mr. Young also testified that Petitioner reacted in a hostile way during this initial meeting when approached about plea negotiations and expressed that he had no interest.

Mr. Young testified that after this meeting with Petitioner, his focus turned to trial preparation and that Petitioner never instructed him to engage in plea negotiations with the Government; rather Petitioner directed him to prepare his case for trial. However, he testified that he continued to discuss plea arrangements with Petitioner but on each occasion when this subject was broached, Petitioner reacted in an angry manner. Mr. Young also expressly denied that Petitioner ever asked him to inquire about any of the former plea offers made by the Government. Mr. Young further testified on cross-examination that Petitioner complained that during the earlier plea discussions with his former counsel, he felt like he was being pressured to enter into a plea agreement and that he did not like the plea offers being presented to him.

Based on Petitioner's hostile reactions, Mr. Young testified that he continued to prepare for trial and roughly a month before trial he recalled receiving information from Petitioner which identified three witnesses and possible information regarding his innocence. He testified that his investigation into the witnesses and the information did not appear to weaken the Government's

8

evidence. In particular, he noted that one of the witnesses had no relevant evidence to give and another witness was incarcerated and appeared clearly averse to the idea of providing testimony.

A few weeks before trial, Mr. Young testified that he received an unsolicited, written plea agreement from Assistant U.S. Attorney ("AUSA") Jill Rose which Mr. Young presented to Petitioner.[3] This agreement provided that Petitioner would be subject to a 5 to 40 year term of imprisonment and it increased the amount of methamphetamine that Petitioner agreed he was responsible for in the conspiracy to at least 1.5 kilograms but less than 5 kilograms. (Id., Doc. No. 469-3: Plea Agreement). Based on his review of the Government's discovery, Mr. Young informed Petitioner that if the witnesses identified by the Government testified consistently with the evidence he had examined, that he would be convicted and receive a lengthy sentence, but he declined to offer a specific possible sentence. Despite this prediction, Mr. Young testified that Petitioner would not read the plea agreement and had no interest in further discussions on the issue of a plea.

On the day of trial, AUSA Rose approached Mr. Young about a possible plea deal and Mr. Young testified that he presented the option to Petitioner, but he quickly refused to entertain the notion of a plea deal. Mr. Young explained that if Petitioner had been open to plea discussions then he would have pursued a written agreement, but he did not recall any discussion with Petitioner concerning his insistence that the plea agreement be in writing. Further, Mr. Young testified that if a plea could be reached he would have ensured that paperwork was

---

[3] According to Mr. Young's testimony, and Petitioner's Exhibit 12 which was received into evidence, there were two written plea offers sent to Mr. Young. In an email from AUSA Rose, she advises that the first plea agreement should be disposed of because it included an incorrect calculation of the statutory sentencing range. This email was sent on February 12, 2008, and Petitioner's trial did not commence until March 4, 2008. (5:06-CR-00041, Doc. No. 469-4).

prepared, and that he had never heard of agreeing to plead guilty without a plea agreement if the terms of the agreement were agreed upon by the parties.[4]

### III.    DISCUSSION

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption. <u>Carpenter v. United States</u>, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. <u>Id.</u>

Petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1297(citing <u>Strickland</u>, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the

---

[4] On cross-examination, Petitioner's counsel delved into prior disciplinary action by the Texas State Bar involving Mr. Young and details regarding a bankruptcy petition he filed just prior to trial. The Court finds that the elicited testimony does not undermine Mr. Young's testimony or his credibility as a witness in any essential respect.

proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

The sole issue before this Court on remand is whether Petitioner can prevail on his claim that his trial counsel was ineffective in failing to engage in plea negotiations with the Government after Petitioner expressly instructed him to do so. Lopez, 570 Fed. App'x at 292. As the Circuit Court noted in Petitioner's direct appeal, the Supreme Court has expressly recognized the right to "effective counsel during plea negotiations." Id. (quoting Missouri v. Frye, 132 S.Ct. 1399, 1407-08 (2012). See Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (same). As in any case regarding a claim of ineffective assistance of counsel regarding the present claim, Petitioner bears the burden under Strickland of proving (1) that his counsel actually declined to engage in plea negotiations despite his professed instruction to do so; and (2) that this failure caused Petitioner substantial prejudice. From this Court's review of the record which includes the evidence presented during the evidentiary hearing, and the opportunity to judge the credibility of the witnesses, and the written submission of the parties following the hearing, the Court finds that Petitioner has failed to meet the first prong of Strickland. Accordingly, the Court need not consider the second prong.

The Court finds that Petitioner's contention that he instructed Mr. Young to engage in plea negotiations is simply not credible. Petitioner was facing a lengthy sentence if convicted on the two counts in his indictment and a plea may have been in his best interest based on the strength of the Government's evidence against him, but the evidence before the Court belies his late contention that he sincerely wanted to admit his guilt under oath after entering into a plea agreement. The evidence shows that Petitioner was presented with four plea offers, two of which

were written plea offers. The first offer was for 14 years and this was communicated by Mr. Johnson. The second was for 12 years and this was conveyed by Mr. Long. The third offer was memorialized in a written plea agreement which was presented to Petitioner by Mr. Wiggins in person during a visit to the Mecklenburg County jail on May 21, 2007. Petitioner's testimony confirms that he received the agreement and that he understood that it provided he could get a sentence of five to forty years if entered into the plea agreement. Petitioner testified that he expressed an interest in pursuing the agreement, but declined to do so until he could speak with Mr. Samuel Long. However, Petitioner did not testify as to what efforts he made, if any, to contact Mr. Long and roughly one month passed before Mr. Long filed a motion to withdraw based on his departure from his former law firm. It would appear that someone who was desirous to plead guilty, and resolve the charges would be proactive in achieving this end yet there is little in the record that Petitioner wished to pursue a plea agreement until he filed his § 2255 motion some two and half years after the jury returned its guilty verdict.

Other than his self-serving testimony, and that of his mother Mrs. Diaz, there is scant evidence that he made a purposeful effort to pursue a plea deal or explore any advice concerning its possible benefit to him.[5] In fact, the evidence is to the contrary. Petitioner testified that he was informed on his first day upon being detained in the Mecklenburg County jail that he would surely be convicted of the drug conspiracy and that he formed the intention that day that he would plead guilty. Yet, Petitioner discharged his court appointed counsel and retained a firm in California that provided him with two attorneys both of whom travelled to North Carolina on his

---

[5] The Court discounts Mrs. Diaz's testimony because of her demeanor on the stand, and the fact that her testimony was substantially outweighed by other evidence before the Court.

behalf. These attorneys were ultimately released. Next, according to Petitioner's testimony, his family retained Mr. Young from Texas and paid him a non-refundable $25,000 fee to represent him that was made over three installments. According to the evidence, Petitioner resided in Hendersonville, North Carolina, during the conspiracy and his parents also resided there. In a motion for reconsideration of pretrial detention, which was prepared by Mr. Johnson and filed by Mr. Wiggins, this claim of residence is also made. (5:06-CR-00041, Doc. No. 155: Motion for Bond Reconsideration). The evidence that Petitioner, or his family, would reach out to attorneys in California, and then Texas and expend serious sums of money is more consistent with a desire for trial than for a guilty plea.

The Court finds that Mr. Young's testimony that he discussed the issue of a possible plea during his initial meeting with Petitioner to be credible. The evidence shows that Petitioner openly expressed no interest in pleading guilty and that he believed that he could prevail at trial based on the mistaken belief that witnesses would refuse to provide critical testimony against him. In addition, the fee agreement supports Mr. Young's testimony that his understanding was that Petitioner insisted that his case was going to be tried. The evidence further shows that Mr. Young renewed his effort to discuss possible plea negotiations after this initial rebuff, but Petitioner steadfastly refused to entertain the idea and even provided Mr. Young with information regarding witnesses that could aid in his defense just weeks before trial. The Court finds that Mr. Young's testimony that he vetted this information regarding the witnesses but found that it would not be helpful is likewise credible.

In the weeks before trial, the Government presented a written plea agreement to Mr. Young and the Court finds Mr. Young's testimony that he forwarded the plea agreement to

13

Petitioner for review and that Petitioner refused to entertain it to be credible. The Court also finds that Mr. Young's testimony is credible that the Government approached him on the day of trial to discuss a possible plea deal and that Petitioner refused to engage in plea negotiations and insisted on going to trial.

Finally, there are two additional reasons why the Court finds that Petitioner is not entitled to relief. First, while Petitioner was represented by Mr. Johnson of California his local counsel, Mr. Wiggins, filed a motion to challenge his pretrial detention which was prepared by Mr. Johnson. As an attorney for Petitioner, Mr. Johnson argued vehemently against his client's guilt and contended that Petitioner "fervently" wanted his day in court and that he was innocent and wanted the chance to be "vindicated" before his "family, friends, and community." (5:06-CR-00041, Doc. No. 155: First Motion for Bond Reconsideration at 3). Mr. Long travelled to North Carolina for the hearing with Petitioner to argue the motion. On December 6, 2006, this motion was summarily denied because Petitioner had an immigration detainer filed against him by Immigration and Customs Enforcement. Thus, according to the motion it appears that Petitioner had been in close communication with his California counsel and provided them the information that he was choosing to contest his guilt at trial.

Second, during his sentencing hearing, Petitioner engaged in a lengthy protest about what he perceived were numerous errors in his trial which included arguments that he was not allowed to present certain witnesses and evidence; that the evidence was insufficient to support his conviction; and that his trial was unfair. Petitioner declared that he would raise these challenges on "appeal under 2255." (5:06-CR-00041, Doc. No. 408: Sent. Tr. at 14). However, he never made mention of his present claims that he had been frustrated in a prior effort to pursue a plea

agreement and forego a trial. Instead his sole focus during allocution was to contend that there was simply no credible evidence that he was involved in the conspiracy and that he would be vindicated when he challenged this evidence on appeal. This is strong evidence of his state of mind reflecting a strategy for trial which persisted throughout the period of Mr. Young's representation and from the beginning of the case.

## IV.     CONCLUSION

For the reasons stated herein, the Court finds that the claim of ineffective assistance of counsel is without merit and it will be denied.

**IT IS, THEREFORE, ORDERED** that Petitioner's claim that his counsel failed to engage in plea negotiations after being instructed to do so is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Further, the Court finds that Petitioner has failed to demonstrate that the dispositive procedural rulings are debatable. See Slack, supra. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

**IT IS SO ORDERED**.

Signed: April 13, 2015

*[signature]*

Richard L. Voorhees
United States District Judge